JUDGE STANTON

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 Civ. 0386

---

OMNICOM GROUP INC.,

Plaintiff,

v.

JOHN CHEVEDDEN,

Defendant.

---

14 Civ. _____

**COMPLAINT**

Omnicom Group Inc. ("Omnicom") files this complaint for a declaratory judgment against Defendant John Chevedden ("Chevedden"). Omnicom seeks a judgment declaring that it is entitled to exclude Chevedden's proposal (the "Proposal") from the proxy materials for Omnicom's 2014 annual meeting of shareholders. Because of timing constraints detailed below, Omnicom plans to file a motion for a speedy hearing pursuant to Federal Rule of Civil Procedure 57.

### Summary of the Action

1. Rule 14a-8 under the Securities Exchange Act of 1934, as amended ("Rule 14a-8") governs the submission of shareholder proposals for inclusion in a company's proxy statement and the bases on which companies may properly exclude such proposals. *See* 17 C.F.R. § 240.14a-8. The Proposal submitted by Chevedden may be excluded from Omnicom's proxy statement under the express terms of Rule 14a-8. Specifically, the Proposal would violate New York law and is so vague and indefinite (and at times false and misleading) that neither the shareholders asked to vote on it nor the company asked to implement it can understand what actions it would require or prohibit. Each of these defects is an independent basis for exclusion under Rule 14a-8.

2.      Omnicom must draft, finalize, and mail its proxy statement to shareholders in advance of its annual meeting, scheduled for May 20, 2014.  These timing and logistical constraints cause Omnicom to seek a declaration from this Court, as soon as is practicable, that the Proposal may be excluded from its proxy statement.

### The Parties

3.      Plaintiff Omnicom is a New York corporation, with its principal office and place of business at 437 Madison Avenue, New York, New York 10022.

4.      Defendant Chevedden is an individual residing in Redondo Beach, California, and may be served with process and a copy of this complaint at 2215 Nelson Avenue, No. 205, Redondo Beach, California 90278.

### Jurisdiction and Venue

5.      This Court has federal question jurisdiction over this matter under 28 U.S.C. § 1331.  This Court also has diversity jurisdiction over this matter under 28 U.S.C. § 1332 because there is complete diversity between Omnicom and Chevedden.  This Court also has jurisdiction over this matter under § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, because the acts or transactions complained of may be enforced in this district, and because Chevedden has transacted business in this district with respect to the matters at issue in this lawsuit.  The amount in controversy exceeds $75,000, exclusive of interests and costs.

6.      This Court has the power to grant declaratory relief under 28 U.S.C. § 2201.  There is an actual controversy between Omnicom and Chevedden.  Chevedden has sought the inclusion of the Proposal in Omnicom's proxy statement for its upcoming annual meeting of shareholders, even though the Proposal is properly excluded according to the express text of Rule 14a-8.  A declaratory judgment is necessary and appropriate to resolve this dispute and the

rights of the parties, so that Omnicom may exclude the Proposal from its proxy statement without incurring risks of liability to Chevedden, other shareholders or the U.S. Securities and Exchange Commission (the "SEC" or "Commission").

7.      Personal jurisdiction and venue, under 28 U.S.C. § 1391, are proper in this district because Chevedden directly, intentionally, and repeatedly has transacted business in this district that is central to the issues in this lawsuit.  Chevedden sent numerous pieces of correspondence to Omnicom in this district seeking to influence how Omnicom, a New York corporation, conducts business in this district.  Chevedden seeks consideration of a shareholder proposal at Omnicom's next annual shareholder meeting and has therefore sought to influence how Omnicom conducts its business in this district, despite failing to comply with the applicable proxy rules.  A substantial part of the events giving rise to, and at issue in, this lawsuit occurred in this district.

### Background

#### A.      Plaintiff Omnicom

8.      Omnicom, through its agencies and subsidiaries, is one of the world's leading providers of advertising, marketing, and corporate communications services.  Omnicom's agencies and subsidiaries, which operate in major markets around the world, provide a comprehensive range of services, including traditional media and digital advertising, customer relationship management, public relations, and specialty communications.  Omnicom's common stock is traded on the New York Stock Exchange.

#### B.      Defendant Chevedden

9.      Chevedden submits more shareholder proposals to U.S. corporations than anyone in history.  In one recent 10-year period, for example, Chevedden accounted for more than 800 proposals considered by the staff of the Division of Corporation Finance (the "Staff") of the SEC

in no-action letters, while *everyone else in the world* accounted for approximately 7,000 such proposals. In other words, over the course of a decade, Chevedden—all by himself—managed to account for more than 10% of the SEC's total no-action letters on shareholder proposals. No other shareholder (whether an individual or an institution) even comes close to this volume—or the burden it imposes on the companies required to consider, evaluate, and, where appropriate (as here), seek to exclude such shareholder proposals.

10.     Despite—or perhaps because of—the sheer volume of Chevedden's shareholder proposals, he frequently fails to comply with the express requirements for such proposals, as set forth in Rule 14a-8, and, as a result, his proposals are routinely excluded from companies' proxy statements.

11.     Numerous courts have granted declaratory judgments to companies permitting them to exclude Chevedden's proposal for violation of Rule 14a-8. *See, e.g., Apache Corp. v. Chevedden*, No. 4:12-cv-00137-LHR (S.D. Tex. 2012); *KBR Inc. v. Chevedden*, No. 4:11-cv-00196-LHR (S.D. Tex. 2011); *Waste Connections, Inc. v. Chevedden*, No. 4:13-cv-00176-KPE (S.D. Tex. 2013).

12.     Chevedden's current proposal similarly disregards the Commission's shareholder proposal rules and should be excluded from Omnicom's proxy statement under Rule 14a-8.

**C.     Chevedden's Proposal**

13.     On December 5, 2013, Chevedden sent an email to Omnicom. Attached to that email was a letter dated December 5, 2013, addressed to the chairman of Omnicom's Board of Directors, and enclosing a document entitled "[OMC: Rule 14a-8 Proposal, December 5, 2013], 4* Confidential Voting" (the "Proposal").

14.     The Proposal and its supporting statement provide as follows:

Shareholders [sic] request our Board of Directors to take the steps necessary to adopt a bylaw that prior to the Annual Meeting, the outcome of votes cast by proxy on uncontested matters, including a running tally of votes for and against, shall not be available to management or the Board and shall not be used to solicit votes.  This enhanced confidential voting requirement should apply to 1) management-sponsored or Board-sponsored resolutions seeking approval of executive pay or for other purposes, including votes mandated under applicable stock exchange rules; 2) proposals required by law, or the Company's Bylaws, to be put before shareholders for a vote (e.g. say-on-pay votes); and 3) Rule 14a-8 shareholder resolutions included in the proxy [sic].

This enhanced confidential voting requirement shall not apply to elections of directors or to contested proxy solicitations, except at the Board's discretion.  Nor shall this proposal impede our Company's ability to monitor the number of votes cast to achieve a quorum, or to conduct solicitations for other proper purposes.

Management is able to monitor voting results and take steps to influence the outcome on matters where they have a direct personal stake such as such as [sic] ratification of stock options.  As a result, a Yale Law School study concluded: "Management-sponsored proposals (the vast majority of which concern stock options or other bonus plans) are overwhelmingly more likely to win a vote by a very small amount than lose by a very small amount to a degree that cannot occur by chance."

This proposal should also be more favorably evaluated due to our Company's clearly improvable corporate governance performance as reported in 2013:

GMI Ratings, an independent investment research firm, was concerned with our board of directors which it rated F.  Seven of our directors had 15 to 27-years [sic] long-tenure.  Long tenure has a reverse relationship with director independence.  Long-tenured directors included: Gary (Roubos (age 76), John Murphy (age 79), John Purcell (age 81) and our Chairman Bruce Crawford (age 84).  Alan Batkin was negatively flagged by GMI due to his director duties at Overseas Shipholding Group when it filed for bankruptcy.  Plus Leonard Coleman was potentially over-burdened with director duties at 4 companies.  Our board had not formally taken responsibility in overseeing our company's social impacts.

In regard to executive pay there was $35 million for John Wren [sic].  Plus Omnicom could give long-term incentive pay to Mr. Wren for below-median performance [sic].

Returning to the core topic of this proposal from the context of our clearly improvable corporate performance, please vote to protect shareholder value:

Confidential Voting – Proposal 4*

(December 5, 2013 letter, attaching the Proposal and supporting statement (attached hereto as

Exhibit A)).

15.     Chevedden's December 5, 2013 letter states that the Proposal is "intended to be used for definitive proxy publication" for Omnicom's "next annual shareholder meeting."

**D.     The Proposal may be Excluded From Omnicom's Proxy Materials Under Rule 14a-8**

16.     Rule 14a-8 establishes requirements for shareholders seeking to submit a proposal for inclusion in a company's proxy statement and sets forth certain substantive bases on which companies may exclude shareholder proposals.  The Proposal should be excluded based on multiple provisions of Rule 14a-8, each of which is independently sufficient to warrant exclusion of the Proposal.

17.     As the Staff has recognized, "[o]nly a court such as a U.S. District Court can decide whether a company is obligated to include shareholder proposals in its proxy materials." SEC Division of Corporation Finance, Informal Procedures Regarding Shareholder Proposal (available at http://www.sec.gov/divisions/corpfin/cf-noaction/14a-8-informal-procedures.htm). As noted above, numerous courts have issued declaratory judgments excluding Chevedden's proposals from various companies' proxy statements.  Omnicom asks this Court to issue a declaratory judgment holding that Omnicom has no obligation to include Chevedden's proposal in its proxy statement, for the reasons below.

**1.     Exclusion is Warranted Under Rule 14a-8(i)(2) Because the Proposal Would, if Implemented, Cause Violations of New York Law**

18.     Rule 14a-8(i)(2) permits companies to exclude shareholder proposals from their proxy statements where "the proposal would, if implemented, cause the company to violate any state, federal or foreign law to which it is subject."  Chevedden's proposal, if implemented, would do just that.

19.     Under New York law, a board of directors has ultimate responsibility for the management of a company.  *See* N.Y. BUS. CORP. LAW § 701 (Consol. 2013).  New York law

also imposes on directors fiduciary duties in discharging their responsibilities, and entitles directors to consider certain types of information in order to do so:

> A director shall perform his duties as a director, including his duties as a member of any committee of the board upon which he may serve, in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances. *In performing his duties, a director shall be entitled to rely on information, opinions, reports or statements including financial statements and other financial data, in each case prepared or presented by . . .*
>
> (2) counsel, public accountants or *other persons as to matters which the director believes to be within such person's professional or expert competence . . .*

N.Y. BUS. CORP. LAW § 717(a) (Consol. 2013) (emphases added).

20.     The Proposal, however, would limit the information directors can consider, including information on which they are entitled under New York law to rely. During shareholder proxy voting, proxy solicitation and investor communications firms, as well as others, routinely provide companies and their directors certain information about shareholder voting. This information can include data regarding how many votes have been cast, which shareholders have cast votes and the status of the preliminary vote total. This information can inform companies and their directors regarding whether, and how, to communicate with shareholders and distribute additional proxy materials to shareholders in response to this preliminary voting information. Thus, rather than an anonymous, one-time decision on the part of the voter (as is common in elections for government offices), corporate proxy voting is more akin to an ongoing conversation between the company and its shareholders. Indeed, the SEC itself has recognized the importance of such communications between companies and their shareholders, stating "[t]he [] communication between a Board and the company's shareholders may lead to enhanced transparency into the board's decision-making process, more effective monitoring of this process by shareholders, and, ultimately, a better decision-making process by

the board." SEC Facilitating Shareholder Director Nominations, 17 C.F.R. §§ 200, 232, 240,

249 (2010), (available at www.sec.gov/rules/final/2010/33-9136.pdf) at 345.

21.    The Proposal would deprive Omnicom's directors, in advance and without any

exceptions, from having access to certain information, including information on which directors

are entitled to rely under New York law, and which can facilitate communications with

Omnicom's shareholders.  This restriction would apply even in instances—many of which

cannot be foreseen—where the directors' fiduciary duties would require them to monitor such

information in order to decide whether, and how, to communicate with shareholders on matters

of critical importance to the company and its shareholders.

22.    Blindfolding directors in this way, in disregard of their duties, is plainly

inconsistent with New York law.  Omnicom is therefore entitled to a declaratory judgment that it

may exclude the Proposal from its proxy statement pursuant to Rule 14a-8(i)(2).

> **2.    Exclusion is Warranted Under Rule 14a-8(i)(3) Because the Proposal and Supporting Statement are Impermissibly Vague and Indefinite and Materially False or Misleading**

23.    Rule 14a-8(i)(3) permits companies to exclude shareholder proposals "[i]f the

proposal or supporting statement is contrary to any of the Commission's proxy rules, including

17 C.F.R. § 240.14a-9 [("Rule 14a-9")], which prohibits materially false or misleading

statements in proxy materials."  Rule 14a-9 specifically provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

Here, there are multiple reasons why Chevedden's Proposal should therefore be excluded under Rule 14a-8(i)(3) and Rule 14a-9.

> **a.    The Proposal is Impermissibly Vague and Indefinite Under Rule 14a-8(i)(3) Because Key Terms are Undefined or Ambiguous**

24.    The Staff has explained that a shareholder proposal is excludable under Rule 14a-8(i)(3) if the proposal is "so inherently vague or indefinite that neither the stockholders voting on the proposal, nor the company implementing the proposal (if adopted), would be able to determine with any reasonable certainty exactly what actions or measures the proposal requires." Staff Legal Bulletin No. 14B (Sept. 15, 2004), Item B.4.

25.    Here, the Proposal is impermissibly vague and indefinite because, among other things, it fails to define key terms that are subject to multiple interpretations, and thus precludes shareholders and Omnicom from understanding what it would require.

> **i.    The Undefined Term "Uncontested Matters" is Impermissibly Vague and Indefinite**

26.    The Proposal purports to apply only to "votes cast by proxy on uncontested matters." This is impermissibly vague and indefinite on several levels.

27.    The term "uncontested" is undefined. Generally speaking, however, any matter that is subject to a vote is, by definition, contested. It is therefore anything but clear what matters, put up for a vote, are to be considered "uncontested" for purposes of the Proposal.

28.    This ambiguity is underscored by the Proposal itself. The Proposal lists three categories of so-called "uncontested matters":

> 1) management-sponsored or Board-sponsored resolutions seeking approval of executive pay or for other purposes, including votes mandated under applicable stock exchange rules; 2) proposals required by law, or the Company's Bylaws, to be put before shareholders for a vote (e.g. say-on-pay votes); and 3) Rule 14a-8 shareholder resolutions included in the proxy.

However, all three of these supposedly uncontested matters can be (and often are) contested. Indeed, the third category ("Rule 14a-8 shareholder resolutions included in the proxy") is, as a practical matter, *always* contested. This is because if a company agrees with a shareholder's proposal, it simply implements the proposal without the need for a shareholder vote. Similarly, the first category of matter in the Proposal ("resolutions seeking approval of executive pay") appears, at a minimum, to substantially overlap the second category ("say-on-pay" executive compensation voting).

29.     As a result, it is far from clear which matters fall into which category of the Proposal, and would thus be subject to the Proposal. Neither the shareholders who would be asked to vote on it, nor the company who would be required to implement it if approved, can reliably understand what matters it applies to or how to comply with it.

30.     Omnicom is therefore entitled to a declaratory judgment that it may exclude the Proposal from the proxy statement as impermissibly vague and indefinite pursuant to Rule 14a-8(i)(3).

### ii.     The Undefined Term "Running Tally" is Impermissibly Vague and Indefinite

31.     The Proposal would also require that management and the Board be denied access to a "running tally" of shareholder votes. However, the Proposal also fails to define what that term means.

32.     During proxy voting, in the time leading up to an annual meeting, companies often receive from investors, financial institutions, investor communications and proxy solicitation firms a variety of information about the shareholder voting at different points in time. The Proposal offers no explanation regarding which, if any, of this information is intended to be deemed a "running tally," whether it applies to both oral and written information, and which of

these different types of voting information management and directors would therefore be prohibited from accessing. Moreover, Omnicom and its directors cannot control what information third parties choose to share with them. Indeed, there are instances in which such reports are legally *required* to be delivered to a company. For example, banks and brokers are obligated by Rule 14b-2 to provide to companies voting instructions of their beneficial owner-clients, and often do so through investor communication firms. *See* 17 C.F.R. § 240.14b-2(b)(2), (3). There is no way of knowing whether such information could be considered a "running tally" under the Proposal, which would impose the odd requirement that a management and a board ignore information legally required to be provided to the company.

33.     Here again, neither shareholders nor Omnicom can understand what the Proposal would do, or how it would be implemented and complied with if approved. This is another independent basis on which Omnicom is entitled to a declaratory judgment that it may exclude the Proposal from the proxy statement as impermissibly vague and indefinite under Rule 14a-8(i)(3).

iii.     **The Undefined Term "Other Proper Purposes" is Impermissibly Vague and Indefinite**

34.     The Proposal states: "Nor shall this proposal impede our Company's ability to monitor the number of votes cast to achieve a quorum, or to conduct solicitations for other proper purposes." There is simply no telling what this means.

35.     The sentence appears intended to create an exception to the Proposal, permitting access to voting information as long as it is for a "proper purpose." The term "proper purpose," however, is undefined. Its meaning is highly subjective and subject to multiple interpretations in various contexts. Accordingly, just as it is unknown which voting matters are intended to be

covered by the Proposal (for reasons explained above), it is also unknown which voting matters are intended *not* to be covered by the Proposal under this "proper purpose" exception.

36.     Here again, the Proposal itself highlights this ambiguity.  On the one hand, it seeks to prevent access to voting information on certain "proposals required by law," but on the other hand it would permit access to voting information "to conduct solicitations for other proper purposes"—as though a solicitation for "proposals required by law" is somehow not a proper purpose.

37.     This portion of the Proposal simply makes no sense.  There is certainly no way a shareholder can understand it or Omnicom to implement or abide by it in a coherent way. Omnicom is, for this additional reason, entitled to a declaratory judgment that it may exclude the Proposal as impermissibly vague and indefinite from the proxy statement pursuant to Rule 14a-8(i)(3).

### b.      References to Outside Sources and Other Statements in the Proposal's Supporting Statement are Materially Misleading

38.     The Proposal is impermissibly vague and indefinite for still other reasons.

39.     First, the supporting statement for the Proposal contains various assertions attributed to information reported by something called "GMI Ratings," an external source that is not publicly available.  Based on a review of the GMI Ratings website, it cannot be determined what data source or type of report the Proposal purports to be citing.  Moreover, the structure of the supporting statement implies that GMI Ratings is the source of all of the information contained therein, the accuracy of which is unknown.

40.     Second, portions of the supporting statement are demonstrably false.  For example, it includes the following misleading and unintelligible partial sentence:  "In regard to executive pay there was $35 million for John Wren."  This is simply false (and in any event has

nothing to do with the Proposal). Total compensation in 2012 for Mr. Wren, the Chief Executive Officer of Omnicom, as reported in Omnicom's most recent (2013) proxy statement, was $14,846,067, not even close to "$35 million."

41.    Omnicom is therefore also entitled to a declaratory judgment that it may exclude the Proposal as false and misleading under Rule 14a-8(i)(3).

**c.    Substantial Portions of the Supporting Statement are Irrelevant to the Subject Matter of the Proposal so as to be Materially Misleading**

42.    There are still more independent grounds that warrant the exclusion of the Proposal under Rule 14a-8(i)(3). Rule 14a-8(i)(3) permits the exclusion of a proposal when "substantial portions of the supporting statement are irrelevant to a consideration of the subject matter of the proposal, such that there is a strong likelihood that a reasonable shareholder would be uncertain as to the matter on which she is being asked to vote." Staff Legal Bulletin 14B, Item B.4; *see also Boise Cascade Corp., SEC No-Action Letter (1983-2003)*, WSB File No. 0129200137 (CCH) (Jan. 23, 2001) (permitting exclusion of supporting statements regarding the director election process, environmental, and social issues and other topics unrelated to a proposal calling for separation of the CEO and chairman).[1]

43.    Here, substantial portions of the Proposal are irrelevant to a consideration of the subject matter of the Proposal. For instance, the supporting statement observes that seven of Omnicom's directors have tenures of more than sixteen years. Chevedden appears to be asserting through this fact that these long tenures threaten the directors' independence. Even if that were true, which it is not, director independence has no bearing on voting procedures outlined in the Proposal.

---

[1] The Commission's no-action letters regarding shareholder proposals pursuant to Rule 14a-8 since 2007 are available at http://www.sec.gov/divisions/corpfin/cf-noaction/14a-8.shtml.

44.     Similarly, the supporting statement asserts the Board "had not formally taken responsibility in overseeing our company's social impacts." This vague allusion to unspecified "social impacts" has nothing to do with confidential shareholder voting.

45.     On this additional basis, Omnicom is entitled to a declaratory judgment that it may exclude the Proposal from the proxy statement pursuant to Rule 14a-8(i)(3) because substantial portions of the supporting statement are irrelevant to the subject of the Proposal so as to be materially misleading.

### 3.     Exclusion is Warranted Under Rule 14a-8(i)(7) Because the Proposal Impermissibly Relates to Ordinary Business Matters

46.     Under Rule 14a-8(i)(7), a company may exclude from its proxy statement a shareholder proposal that "deals with a matter relating to the company's ordinary business operations."

47.     The SEC has stated that the policy underlying the ordinary business exclusion is based on two considerations:  first, whether a proposal relates to "tasks so fundamental to management's ability to run a company on a day-to-day basis they could not be subject to shareholder oversight;" and second, whether a "proposal seeks to 'micromanage' a company by probing too deeply into matters upon which shareholders would not be in a position to make an informed judgment." Exchange Act Release No. 40,018, 17 C.F.R § 240 (May 21, 1998).  Here, the Proposal would violate both of these principles.

48.     First, the Proposal, if implemented, would inhibit Omnicom's ability to engage in routine dialogue with its shareholders.  In fact, by making shareholder communications more complicated and costly, the Proposal plainly intrudes on management's ability to run the company.  This is an ordinary business matter, not something appropriate for a shareholder vote.

49.     Second, the Proposal asks shareholders to vote on issues on which they cannot reasonably be expected to make informed judgments.  The Proposal asks shareholders to decide whether to prohibit Omnicom's management and directors from examining a "running tally" for three categories of "uncontested matters"—the definitions of which are, as explained above, far from clear—but to permit management and the Board to examine such information for all other matters.

50.     Shareholders generally are not equipped to make such fine distinctions regarding how a company should conduct itself.  Indeed, this is exactly the kind of micromanagement of company decisions that Rule 14a-8(i)(7) precludes.  *See, e.g., Amazon.com, Inc., SEC No-Action Letter (2004-2013)*, WSB File No. 0401201315 (CCH) (Mar. 20 2013) (finding the shareholder proposal requesting the board of directors hold a competition for giving public advice on the voting items in the proxy filing sought to micromanage the company to an impermissible degree).

51.     As a result, Omnicom is entitled to a declaratory judgment that it may exclude the Proposal pursuant to Rule 14a-8(i)(7).

## **Declaratory Judgment**

52.     In accordance with 28 U.S.C. § 2201, an actual controversy exists between Omnicom and Chevedden.

53.     For the reasons set forth above, Chevedden's Proposal does not comply with the requirements of Rule 14a-8.  Omnicom seeks, and is entitled to, a declaration that it may properly exclude Chevedden's Proposal from its proxy materials in accordance with Rule 14a-8. This relief is necessary because "[a] company that decides to exclude a proposal without even

asking for no-action relief . . . faces a high probability of an investigation by the SEC's Division

of Enforcement." Broc Romanek, *Shareholder Proposals Handbook*, at 36 (May 2013).

54.     A declaratory judgment is needed promptly.  Omnicom must file its definitive

proxy statement no later than April 10, 2014.  Omnicom's annual meeting is scheduled to occur

on May 20, 2014, and the final proxy materials for such meeting must be prepared, assembled,

filed, and mailed to shareholders at least 40 days in advance of that meeting.  In addition, at least

10 days prior to mailing, Omnicom must file a preliminary proxy with the SEC under Rule 14a-

8.

55.     Given the time required to prepare, assemble, and file the necessary proxy

materials, Omnicom must know as soon as is practicable whether it may exclude the Proposal

from its proxy materials.  Accordingly, Omnicom seeks from this Court a declaratory judgment

to that effect no later than April 1, 2014.

## Relief Sought

56.     Omnicom requests that this Court declare that Omnicom properly may exclude

the Proposal from Omnicom's proxy materials under Rule 14a-8.  Omnicom also requests

judgment against Chevedden for its costs, including attorneys' fees and expenses, and such other

and further relief as the Court may deem just and proper.

Dated: January 21, 2014

Respectfully submitted,

Jeff G. Hammel
Sarah Lightdale
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
Tel: (212) 906-1200
Fax: (212) 906-751-4864
Email: jeff.hammel@lw.com
Email: sarah.lightdale@lw.com

Counsel for Plaintiff Omnicom Group Inc.