# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

OMNICOM GROUP INC.,

                Plaintiff,

   v.

JOHN CHEVEDDEN,

                Defendant.

1:14-cv-0386 (LLS) (GWG)

## PLAINTIFF OMNICOM GROUP INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Jeff G. Hammel
Sarah Lightdale
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
(212) 906-1200

Counsel for Plaintiff Omnicom Group Inc.

February 7, 2014

# Table Of Contents

Page

Preliminary Statement ........................................................................................1

Statement of Facts ............................................................................................3

    A.    Plaintiff Omnicom ..............................................................................3

    B.    Defendant Chevedden ..........................................................................3

    C.    Chevedden's "Enhanced Confidential Voting" Proposal .......................................4

    D.    This Litigation ..................................................................................7

Argument ......................................................................................................7

I.    THE PROPOSAL SHOULD BE EXCLUDED UNDER RULE 14a-8(i)(2)
BECAUSE IT WOULD VIOLATE NEW YORK LAW ...................................................8

    A.    The Proposal Would Unlawfully Interfere With Omnicom's Directors'
Performance of Their Fiduciary Duties .................................................8

    B.    The Proposal Would Unlawfully Prevent Omnicom's Directors From
Having Access to Information ............................................................11

II.    THE PROPOSAL SHOULD BE EXCLUDED UNDER RULE 14a-8(i)(3)
BECAUSE IT AND THE SUPPORTING STATEMENT ARE MATERIALLY
FALSE AND MISLEADING AND IMPERMISSIBLY VAGUE AND
INDEFINITE .............................................................................................11

    A.    The Proposal Contains Materially False and Misleading Information .................12

    B.    The Proposal is Impermissibly Vague and Indefinite Under Rule 14a-
8(i)(3) Because Key Terms are Undefined or Ambiguous ...................................13

        1.    The Undefined Term "Uncontested Matters" is Impermissibly
Vague and Indefinite....................................................................14

        2.    The Undefined Term "Running Tally" is Impermissibly Vague and
Indefinite .................................................................................16

        3.    The Undefined Term "Other Proper Purposes" is Impermissibly
Vague and Indefinite.....................................................................17

        4.    Substantial Portions of the Supporting Statement are Irrelevant to
the Subject Matter of the Proposal so as to be Materially
Misleading.................................................................................18

i

III.    THE PROPOSAL SHOULD BE EXCLUDED UNDER RULE 14a-8(i)(7) BECAUSE IT IMPERMISSIBLY RELATES TO ORDINARY BUSINESS MATTERS .................................................................................................... 20

Conclusion ........................................................................................................................... 22

# Table of Authorities

**CASES**  **PAGE(S)**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................ 8

*CA, Inc. v. AFSCME Emp. Pension Plan*,
    953 A.2d 227 (Del. 2008) ................................................................ 9

*Clarkson Co. v. Shaheen*,
    660 F.2d 506 (2d Cir. 1981).............................................................11

*Dyer v. SEC*,
    287 F.2d 773 (8th Cir. 1961) .......................................................... 13

*Hanson Trust PLC v. ML SCM Acquisition, Inc.*,
    781 F.2d 264 (2d Cir. 1986)............................................................. 9

*In re MONY Grp., Inc. S'holder Litig.*,
    853 A.2d 661 (Del. Ch. 2004) ........................................................ 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ........................................................................ 8

*Mercier v. Inter-Tel (Del.), Inc.*,
    929 A.2d 786 (Del. Ch. 2007) ........................................................ 10

*N.Y.C. Emps.' Ret. Sys. v. Am. Brands, Inc.*,
    634 F. Supp. 1382 (S.D.N.Y. 1986).................................................. 7

*Roosevelt v. E.I. Du Pont de Nemours & Co.*,
    958 F.2d 416 (D.C. Cir. 1992) ......................................................... 7

*RSL Comm's PLC v. Bildirici*,
    649 F. Supp. 2d 184 (S.D.N.Y. 2009) .............................................. 9

*Weinstock v. Columbia Univ.*,
    224 F.3d 33 (2d. Cir. 2000) ............................................................. 8

*Wolfson v. Bruno*,
    844 F. Supp. 2d 348 (S.D.N.Y. 2011) .............................................. 8

## RULES, REGULATIONS AND STATUTES

17 C.F.R. § 240.14a-8.................................................................................. 1, 4, 14

17 C.F.R. § 240.14a-8(i)(2)...................................................................... 1, 8, 10, 11

17 C.F.R. § 240.14a-8(i)(3).............................................................................. *passim*

17 C.F.R. § 240.14a-8(i)(7)........................................................................ 2, 20, 21

17 C.F.R. § 240.14a-9 ................................................................................ 2, 11, 12

17 C.F.R. § 240.14b-2(b)(2)............................................................................... 16

17 C.F.R. § 240.14b-2(b)(3)............................................................................... 16

26 C.F.R. § 56.4911-2 ....................................................................................... 17

Fed. R. Civ. P. 56(c) .......................................................................................... 8

N.Y. BUS. CORP. LAW § 603 .............................................................................. 7

N.Y. BUS. CORP. LAW § 701(a) ......................................................................... 8

N.Y. BUS. CORP. LAW § 717(a) ...................................................................... 8, 11

## SEC NO-ACTION LETTERS

*Advanced Fibre Communications, Inc.*,
  *SEC No-Action Letter* (1983-2003), WSB File No. 0324200331 (CCH) (Mar. 10, 2003) .........21

*Amazon.com, Inc.*,
  *SEC No-Action Letter* (2004-2013), WSB File No. 0401201315 (CCH) (Mar. 20, 2013) .........21

*AT&T, Inc.*,
  *SEC No-Action Letter* (2004-2013), WSB File No. 0301201030 (CCH) (Feb. 16, 2010) ..........17

*Bank of America Corp.*,
  *SEC No-Action Letter* (2004-2013), WSB File No. 0325201312 (CCH) (Mar. 12, 2013) .........15

*Boeing Co.*,
  *SEC No-Action Letter* (1983-2003), WSB File No. 0305200107 (CCH) (Feb. 20, 2001) ..........21

*Citigroup Inc.*,
  *SEC No-Action Letter* (2004-2013), WSB File No. 0305201203 (CCH) (Feb. 22, 2012) ............8

*Comshare, Inc.*,
  *SEC No-Action Letter* (1983-2003), WSB File No. 0828200007 (CCH) (Aug. 23, 2000) .........12

*Deere & Co.*,
  *SEC No-Action Letter* (2004-2013), WSB File No. 1118201301 (CCH) (Nov. 4, 2013) .......4, 15

*Dover Corp.*,
  *SEC No-Action Letter* (2004-2013), WSB File No. 1209201304 (CCH) (Dec. 5, 2013)..............4

*Energy East Corp.*,
  *SEC No-Action Letter* (1983-2003), WSB File No. 0324200360 (CCH) (Mar. 20, 2003) .........19

*Entergy Corp.*,
  *SEC No-Action Letter* (2004-2013), WSB File No. 0226200738 (CCH) (Feb. 14, 2007) ..........19

*Fuqua Industries, Inc.*,
  *SEC No-Action Letter* (1983-2003), WSB File No. 031891012 (CCH) (Mar. 12 1991) ............13

*General Electric Co.*,
  *SEC No-Action Letter* (1983-2003), WSB File No. 0222200003 (CCH) (Feb 10, 2000) ...........21

*Hewlett-Packard Co.*,
  *SEC No-Action Letter* (2004-2013), WSB File No. 1230201304 (CCH) (Dec. 19, 2013)............4

*IDACORP, Inc.*,
  *SEC No-Action Letter* (2004-2013), WSB File No. 1210200711 (CCH) (Dec. 10, 2007)..........20

*Jameson Inns, Inc.*,
  *SEC No-Action Letter* (1983-2003), WSB File No. 0521200103 (CCH) (May 15, 2001)..........21

*Peregrine Pharmaceuticals*,
  *SEC No-Action Letter* (2004-2013), WSB File No. 0722201306 (CCH) (Jul. 16, 2013) ...........20

*Prudential Financial Inc.*,
  *SEC No-Action Letter* (2004-2013), WSB File No. 0226200716 (CCH) (Feb. 16, 2006) ..........15

*The Charles Schwab Corp.*,
  *SEC No-Action Letter* (2004-2013), WSB File No. 0312201216 (CCH) (Mar. 7, 2012) ...........12

*Verizon Communications Inc.*,
  *SEC No-Action Letter* (2004-2013), WSB File No. 0303200804 (CCH) (Feb. 21, 2008) ..........18

*Wal-Mart Stores, Inc.*,
  *SEC No-Action Letter (1983-2003)*, WSB File No. 032299018 (CCH) (Mar. 15, 1999) ..........21

## INTERNET DOCUMENTS

*Contested Definition,* OXFORD ENGLISH DICTIONARY,
  *available at* http://www.oed.com/view/Entry/40199?redirectedFrom=contested ......................14

*GMI Ratings, available at* http://www3.gmiratings.com/ ...........................................................13

**SEC DOCUMENTS**

SEC Division of Corporation Finance, Informal Procedures Regarding Shareholder Proposals,
*available at* http://www.sec.gov/divisions/corpfin/cf-noaction/
14a-8-informal-procedures.htm ................................................................ 2

SEC, Exchange Act Release No. 34-40,018, 17 §240 (May 21, 1998),
*available at* http://www.sec.gov/rules/final/34-400018.htm ..................................... 20

SEC, Facilitating Shareholder Director Nominations,
17 C.F.R. §§ 200, 232, 240, 249 (2010),
a*vailable at* www.sec.gov/rules/final/2010/33-9136.pdf (excerpts) ............................. 7

SEC Staff Legal Bulletin No. 14B (Sept. 15, 2004),
*available at* http://www.sec.gov/interps/legal/cfslb14b.htm ............................... 13, 19

SEC Staff Legal Bulletin No. 14G (Oct. 16, 2012),
*available at* http://www.sec.gov/interps/legal/cfslb14g.htm ............................... 12, 13

**ARTICLES AND BOOKS**

Keir D. Gumbs et al.,
*Debunking the Myths Behind Voting Instruction Forms and Vote Reporting*, Corporate
Governance Advisor (July/August 2013) ........................................................ 6

Marcel Kahan & Edward Rock, *The Insignificance of Proxy Access*,
97 VA. L. REV. 1347 (Oct. 2011) ............................................................. 6

R. FRANKLIN BALOTTI ET AL., MEETINGS OF STOCKHOLDERS § 12.6 (July 2013) ...................... 14

**COURT DOCUMENTS**

Final Judgment dated February 13, 2012 in *Apache Corp. v. Chevedden*,
No. 4:12-v-00137-LHR (S.D. Tex. 2012) (ECF NO. 10) .......................................... 2

Memorandum and Order dated April 4, 2011 in *KBR Inc. v. Chevedden*,
No. 4:11-cv-00196-LHR (S.D. Tex. 2011) (ECF No. 24) .......................................... 3

Order dated June 3, 2013 in *Waste Connections, Inc. v. Chevedden*,
No. 4:13-cv-00176-KPE (S.D. Tex. 2013) (ECF Nol. 32) ........................................ 2

Plaintiff Omnicom Group Inc. ("Omnicom") submits this memorandum of law in support of its motion for summary judgment.

<u>**Preliminary Statement**</u>

Defendant John Chevedden ("Chevedden") seeks to force Omnicom to include in its proxy materials for its 2014 annual meeting, and to distribute to its shareholders, a proposal that would violate New York law and which includes materially false and misleading information, among other fatal defects. Omnicom seeks from this Court a declaratory judgment that Chevedden's proposal is properly excluded from its proxy statement under the express terms of U.S. Securities and Exchange Commission ("SEC") Rule 14a-8, which governs such shareholder proposals. *See* 17 C.F.R. § 240.14a-8.

Chevedden's so-called "enhanced confidential voting" proposal is intended to deprive Omnicom's directors and management of information that public companies routinely receive about the status of shareholder voting before such voting is final. It would also forbid them from soliciting such shareholder votes. This would represent a substantial change to corporate voting procedures. As the SEC has recognized, this type of information enables companies to communicate with shareholders and to solicit votes consistent with the best interests of the company.

Chevedden's proposal should be excluded from Omnicom's proxy under Rule 14a-8 on numerous independent grounds:

- <u>The Proposal Violates New York Law.</u> The proposal would violate New York law by depriving the directors of Omnicom of categories of information they may need, and by barring them from taking steps required, to fulfill their fiduciary duties. Rule 14a-8(i)(2) specifically permits the exclusion of proposals that would cause such violations of law.

- <u>The Proposal Is Materially False and Misleading.</u> The proposal includes the following misrepresentation, among others: "In regard to executive pay, there was $35 million for John Wren," Omnicom's CEO. This is flatly untrue—there is

1

no year in which Mr. Wren was paid that amount. Rule 14a-8(i)(3) and Rule 14a-9 expressly permit the exclusion of a proposal that is "false or misleading in any material respect."

- <u>The Proposal Is Impermissibly Vague and Indefinite.</u>  The proposal contains numerous undefined terms, such as "contested matter," "running tally" and "other proper purposes," all of which result in unresolvable ambiguities and irreconcilable contradictions, such that neither the shareholders asked to vote on the proposal nor the company asked to implement it can understand what it would require or prohibit. Rule 14a-8(i)(3) permits the exclusion of shareholder proposals containing such defects.

- <u>The Proposal Impermissibly Seeks to Micromanage Ordinary Business Matters.</u>  The proposal seeks to regulate how Omnicom communicates with its shareholders, and asks shareholders to make detailed distinctions about which such communications should be allowed and which should be banned. Rule 14a-8(i)(7) permits the exclusion of proposals that seek to micromanage such ordinary business matters.

Each of these defects is an independent basis to exclude Chevedden's proposal under Rule 14a-8.

Chevedden is no stranger to having his proxy proposals excluded. He is singlehandedly responsible for papering companies across America with *hundreds of proposals*—more than any other investor. His proposals are frequently defective and are routinely excluded from proxy statements for failure to comply with SEC rules.

Nevertheless, companies who receive defective shareholder proposals, even ones as riddled with obvious defects as Chevedden's proposal to Omnicom, cannot decide on their own to exclude them from their proxy statements. As the SEC Staff has recognized: "*Only a court such as a U.S. District Court* can decide whether a company is obligated to include a shareholder proposal in its proxy materials." SEC Division of Corporation Finance, Informal Procedures Regarding Shareholder Proposals, http://www.sec.gov/divisions/corpfin/cf-noaction/14a-8-informal-procedures.htm (emphasis added). Courts have regularly ruled that Chevedden's proposals can be excluded. *See, e.g.*, *Apache Corp. v. Chevedden*, No. 4:12-cv-00137-LHR (S.D. Tex. 2012) (Final Judgment, Feb. 13, 2012 (ECF No. 10)); *Waste*

*Connections, Inc. v. Chevedden*, No. 4:13-cv-00176-KPE (S.D. Tex. 2013) (Order, Jun. 3, 2013 (ECF No. 32)); *KBR Inc. v. Chevedden*, No. 4:11-cv-00196-LHR (S.D. Tex. 2011) (Memorandum and Order, April 4, 2011 (ECF No. 24)).

The same result is warranted here. Chevedden's proposal may be excluded under the plain terms of Rule 14a-8. This is purely a legal question; no material facts are in dispute. Omnicom asks this Court to grant summary judgment, and issue a declaratory judgment, holding that Chevedden's proposal may be excluded from its proxy materials.

## Statement of Facts

### A. Plaintiff Omnicom

Omnicom is one of the world's leading providers of advertising, marketing and communications services. (Lightdale Decl., Ex. 1.)[1] Omnicom's agencies and subsidiaries, which operate in major markets throughout the world, provide traditional media and digital advertising, customer relationship management, public relations and other services. *Id.* Omnicom is a Fortune 500 company and is listed on the New York Stock Exchange. (Lightdale Decl., Exs. 2, 1.)

### B. Defendant Chevedden

Chevedden submits more shareholder proposals to U.S. corporations than anyone in history. To take just the last two years as examples, in 2012 Chevedden personally made 37 out of a total of 207 proposals submitted to U.S. companies, and in 2013 he made 59 out of a total of 263 proposals. (*See* Lightdale Decl., Exs. 3, 4.) In other words, over these two years,

---

[1]    Cites to "Lightdale Decl." refer to the Declaration of Sarah Lightdale filed contemporaneously herewith, and cites to "Lightdale Decl., Ex. _" refer to exhibits thereto.

Chevedden made 96 out of the 470 proposals made by all shareholders in the world—20%—all by himself.[2]  No other shareholder comes close.  And he has been doing the same thing for years.

Despite—or perhaps because of—the sheer volume of Chevedden's shareholder proposals, he frequently fails to comply with the requirements for such proposals, as set forth in Rule 14a-8.  As a result, his proposals are routinely excluded from companies' proxy statements, both by courts (as noted above) and by the SEC.  *See, e.g.*, *Hewlett-Packard Co.*, *SEC No-Action Letter (2004-2013)*, WSB File No. 1230201304 (CCH) (Dec. 19, 2013) (permitting exclusion of Chevedden's proposal); *Dover Corp.*, *SEC No-Action Letter (2004-2013)*, WSB File No. 1209201304 (CCH) (Dec. 5, 2013) (same); *Deere & Co.*, *SEC No-Action Letter (2004-2013)*, WSB File No. 1118201301 (CCH) (Nov. 4, 2013) (same).[3]  Chevedden's current proposal similarly disregards controlling SEC rules and should be excluded from Omnicom's proxy statement under Rule 14a-8.

### C.     Chevedden's "Enhanced Confidential Voting" Proposal

On December 5, 2013, Chevedden sent, by e-mail, a letter addressed to the chairman of Omnicom's Board of Directors, enclosing a document entitled "[OMC: Rule 14a-8 Proposal, December 5, 2013], 4* Confidential Voting."  (Rule 56.1 Statement of Facts[4] at ¶ 2; Lightdale Decl., Ex. 5.)

The proposal and its supporting statement provide as follows:

---

[2]     In fact, this percentage is likely much higher.  The numbers above account only for proposals submitted in Chevedden's name, and exclude other proposals he routinely advances though other shareholders.

[3]     The SEC's no-action letters regarding shareholder proposals pursuant to Rule 14a-8 since 2007 are available at http://www.sec.gov/divisions/corpfin/cf-noaction/14a-8.shtml.  For the Court's convenience, we are submitting herewith an appendix of these and other authorities.

[4]     Cites to "Rule 56.1 Statement of Facts" refer to the Local Rule 56.1 Statement of Material Facts filed contemporaneously herewith.

Shareholders [sic] request our Board of Directors to take the steps necessary to adopt a bylaw that prior to the Annual Meeting, the outcome of votes cast by proxy on uncontested matters, including a running tally of votes for and against, shall not be available to management or the Board and shall not be used to solicit votes. This enhanced confidential voting requirement should apply to 1) management-sponsored or Board-sponsored resolutions seeking approval of executive pay or for other purposes, including votes mandated under applicable stock exchange rules; 2) proposals required by law, or the Company's Bylaws, to be put before shareholders for a vote (e.g. say-on-pay votes); and 3) Rule 14a-8 shareholder resolutions included in the proxy [sic].

This enhanced confidential voting requirement shall not apply to elections of directors or to contested proxy solicitations, except at the Board's discretion. Nor shall this proposal impede our Company's ability to monitor the number of votes cast to achieve a quorum, or to conduct solicitations for other proper purposes.

Management is able to monitor voting results and take steps to influence the outcome on matters where they have a direct personal stake such as such as [sic] ratification of stock options. As a result, a Yale Law School study concluded: "Management-sponsored proposals (the vast majority of which concern stock options or other bonus plans) are overwhelmingly more likely to win a vote by a very small amount than lose by a very small amount to a degree that cannot occur by chance."

This proposal should also be more favorably evaluated due to our Company's clearly improvable corporate governance performance as reported in 2013:

GMI Ratings, an independent investment research firm, was concerned with our board of directors which it rated F. Seven of our directors had 16 to 27-years [sic] long-tenure. Long tenure has a reverse relationship with director independence. Long-tenured directors included: Gary Roubos (age 76), John Murphy (age 79), John Purcell (age 81) and our Chairman Bruce Crawford (age 84). Alan Batkin was negatively flagged by GMI due to his director duties at Overseas Shipholding Group when it filed for bankruptcy. Plus Leonard Coleman was potentially over-burdened with director duties at 4 companies. Our board had not formally taken responsibility in overseeing our company's social impacts.

In regard to executive pay there was $35 million for John Wren [sic]. Plus Omnicom could give long-term incentive pay to Mr. Wren for below-median performance [sic].

Returning to the core topic of this proposal from the context of our clearly improvable corporate performance, please vote to protect shareholder value:

Confidential Voting – Proposal 4*

(Lightdale Decl., Ex. 5.)

On January 13, 2014, Omnicom sent a letter asking Chevedden to provide a copy of the "Yale Law School study" and the "GMI Ratings" documents referenced in the proposal. (Rule 56.1 Statement of Facts at ¶ 3; Lightdale Decl., Ex. 6.) On January 16, 2014, Chevedden sent an e-mail purportedly providing a link to a website through which a GMI Ratings report is supposedly accessible, but he has never provided either the Yale Law School study or the GMI Ratings report actually cited in the proposal. (Rule 56.1 Statement of Facts at ¶ 5; Lightdale Decl. at ¶ 9.)

Chevedden's proposal seeks to prevent Omnicom's management and its directors from having access to certain preliminary proxy voting information in some circumstances (although, as explained below, precisely what types of information and under what circumstances is unclear) and to prevent them from using that information to solicit votes. This would represent a profound change to the ordinary course of corporate elections. Proxy solicitation and investor communications firms, as well as others, routinely provide companies and their directors with information about shareholder voting. *See, e.g.*, Keir D. Gumbs et al., *Debunking the Myths Behind Voting Instruction Forms and Vote Reporting*, Corporate Governance Advisor at 2, 4 (July/August 2013). "When shareholders submit their votes, they do not go into a black ballot box that is left unopened until the shareholder meeting, when the votes are counted and the winner is declared. Rather, information about who casts votes for whom becomes available throughout the duration of the contest." Marcel Kahan & Edward Rock*, The Insignificance of Proxy Access*, 9 VA. L. REV. 1347, 1401-02 (2011).

Such information can facilitate communications with shareholders on important voting issues. *Id.* Indeed, the SEC has recognized the importance of such communications between companies and their shareholders, stating "[t]he [] communication between a Board and

the company's shareholders may lead to enhanced transparency into the board's decision-making process, more effective monitoring of this process by shareholders, and, ultimately, a better decision-making process by the board." SEC, Facilitating Shareholder Director Nominations, 17 C.F.R. §§ 200, 232, 240, 249 at 345 (2010), *available at* www.sec.gov/rules/final/2010/33-9136.pdf.

### D. This Litigation

A private right of action under Rule 14a-8 is well-settled. *See N.Y.C. Emp. Ret. Sys. v. Am. Brands, Inc.*, 634 F. Supp. 1382, 1386 (S.D.N.Y. 1986); *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 425 (D.C. Cir. 1992). Omnicom filed this case on January 21, 2014, seeking a declaratory judgment that Chevedden's proposal may be excluded from its 2014 proxy statement under Rule 14a-8.

Omnicom must draft, finalize and file with the SEC its definitive proxy statement in advance of its annual meeting scheduled for May 20, 2014.[5] (Lightdale Decl. at ¶ 12.) Accordingly, Omnicom requested expedited consideration of this motion under Rule 57, in an effort to have the case resolved by April 1, 2014. On January 28, 2014, the Court ordered expedited briefing (Docket Entry No. 5). This motion is filed consistent with that schedule.

### Argument

Summary judgment is appropriate "'if the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[5] Chevedden has, in correspondence to the Court, asserted that May 20, 2014, is an arbitrary date, and that the annual meeting can occur at any later point. (Lightdale Decl., Ex. 8.) This is not accurate. Omnicom's traditional annual meeting date is the Tuesday before Memorial Day, on which it has held every annual meeting but one since 2001. (Lightdale Decl., Exs. 9-21.) This year, that day is May 20. In addition, New York corporations are required by New York law to hold an annual meeting at least every 13 months, *see* N.Y. BUS. CORP. LAW § 603, and Omnicom's last annual meeting was held on May 21, 2013.

matter of law.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d. Cir. 2000) (quoting Fed. R. Civ. P. 56(c)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "To defeat a summary judgment motion, the non-moving party must do 'more than simply show that there is some metaphysical doubt as to the material facts.'" *Wolfson v. Bruno*, 844 F. Supp. 2d 348, 353 (S.D.N.Y. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

There are no material facts in dispute here. Summary judgment is warranted.

## I.     THE PROPOSAL SHOULD BE EXCLUDED UNDER RULE 14a-8(i)(2) BECAUSE IT WOULD VIOLATE NEW YORK LAW

Rule 14a-8 sets forth numerous bases on which shareholder proposals may be excluded from proxy statements. One such basis, in Rule 14a-8(i)(2), expressly provides that shareholder proposals may be excluded where "the proposal would, if implemented, cause the company to violate any state, federal or foreign law to which it is subject." *See* 17 C.F.R. § 240.14a-8(i)(2); *see also Citigroup Inc.*, *SEC No-Action Letter (2004-2013)*, WSB File No. 0305201203 (CCH) (Feb. 22, 2012). Chevedden's proposal would do just that.

### A.     The Proposal Would Unlawfully Interfere With Omnicom's Directors' Performance of Their Fiduciary Duties

Omnicom is a New York corporation. (Rule 56.1 Statement of Facts at ¶ 1; Lightdale Decl., Ex. 1.) Under New York law, a board of directors has ultimate responsibility for the management of a company. *See* N.Y. BUS. CORP. LAW § 701(a) ("Subject to any provision in the certificate of incorporation . . . the business of a corporation shall be managed under the direction of its board of directors."). New York law also imposes fiduciary duties on directors in discharging their responsibilities. N.Y. BUS. CORP. LAW § 717(a) ("A director shall perform his duties as a director, including his duties as a member of any committee of the board upon which

8

he may serve, in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances."); *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986) ("Under New York corporation law, a director's obligation to a corporation and its shareholders includes a duty of care in the execution of directorial responsibilities. Under the duty of care, a director, as a corporate fiduciary, in the discharge of his responsibilities must use at least that degree of diligence that an 'ordinarily prudent' person under similar circumstances would use.").

Chevedden's proposal would fundamentally interfere with Omnicom's directors' abilities to fulfill their fiduciary duties. Delaware law—to which New York courts often look on matters of corporate law[6]—firmly establishes that directors must be able to act freely in order to fulfill their fiduciary duties, and that corporate bylaws may not impose restrictions on their ability to do so. In *CA, Inc. v. AFSCME Emp. Pension Plan*, 953 A.2d 227 (Del. 2008), for example, the Delaware Supreme Court rejected a bylaw that would require a board to reimburse shareholders' proxy expenses because it could obligate the board to reimburse such expenses even where doing so would breach its fiduciary duties. *Id.* at 238. The court held that the test for the validity of bylaws restricting a board's actions is whether there are "any possible circumstances" in which the bylaw could cause the board to violate its fiduciary duties. *Id.*

Chevedden's proposed bylaw would impose a blanket prohibition on Omnicom's directors' ability to access and act upon potentially material information. Such a bylaw would not merely "possibly" limit the directors' abilities to fulfill their fiduciary duties—it would *definitely* impede their ability to do so. A board almost always has a view on whether an issue

---

[6]     *See RSL Comm's PLC v. Bildirici*, 649 F. Supp. 2d 184, 205-06 (S.D.N.Y. 2009) (applying New York law) ("It goes without saying that, while the Court is not obligated to follow Delaware law in this matter, many courts—including this one—appropriately look to the views of Delaware's learned jurists when analyzing issues of corporate law.").

subject to a shareholder vote should be approved or disapproved, consistent with the best interests of the company and its shareholders.[7]  Delaware courts routinely recognize that directors properly exercise their fiduciary duties by taking steps to achieve that preferred voting outcome—including by monitoring preliminary voting results, soliciting proxies and taking other actions.  *See, e.g.*, *In re MONY Grp. Inc. S'holder Litig.*, 853 A.2d 661, 675-76 (Del. Ch. 2004) (". . . once a board of directors deems a merger agreement favorable, it may employ various legal powers to achieve a favorable outcome on a shareholder vote required to approve that agreement. Directors can spend the corporation's money on printing and distributing a proxy statement explaining their judgment as to the benefits of the merger proposal.  They can retain experts to solicit proxies and publicize their views."); *Mercier v. Inter-Tel (Del.), Inc.*, 929 A.2d 786 (Del. Ch. 2007) (noting that it was within the board's exercise of its fiduciary duties to monitor voting results and to postpone a merger vote where there were insufficient votes to approve a proposal that the board believed to be in the best interests of the stockholders).  Yet it is precisely such exercise of fiduciary duties that Chevedden's proposal would prohibit.

Chevedden's proposal would blindfold and handcuff Omnicom's directors, denying them access to important information and the ability to act upon it.  This would plainly impede their exercise of fiduciary duties, and is contrary to law and sound corporate governance. This Court should hold that Omnicom may exclude Chevedden's proposal from its proxy statement, for this reason alone, pursuant to Rule 14a-8(i)(2).

---

[7]     This is why, for example, proxy statements commonly include the board's "recommendations" to shareholders on each voting subject.  (*See, e.g.*, Lightdale Decl., Ex. 21.)

### B. The Proposal Would Unlawfully Prevent Omnicom's Directors From Having Access to Information

In order to fulfill their duties, directors are also required to be adequately informed about the affairs of their company. *See Clarkson Co. Ltd. v. Shaheen*, 660 F.2d 506, 512 (2d Cir. 1981). Indeed, New York has codified that "in performing his duties, a director shall be entitled to rely on information, opinions, reports or statements including financial statements and other financial data, in each case prepared or presented by . . . (2) counsel, public accountants or other persons as to matters which the director believes to be within such person's professional or expert competence . . ." N.Y. BUS. CORP. LAW § 717(a).

As noted above, various types of preliminary voting information prepared by professional proxy solicitation and corporate communications firms, among others, are routinely available to companies *See supra* at 6. However, Chevedden's proposal would prevent Omnicom's directors from considering entire categories of information that directly impact Omnicom. Depriving directors of information about *their* company—including information on which they are entitled by statute to rely—would violate New York law. Omnicom should be permitted to exclude the proposal from its proxy statement pursuant to Rule 14a-8(i)(2) on this additional basis.

### II. THE PROPOSAL SHOULD BE EXCLUDED UNDER RULE 14a-8(i)(3) BECAUSE IT AND THE SUPPORTING STATEMENT ARE MATERIALLY FALSE AND MISLEADING AND IMPERMISSIBLY VAGUE AND INDEFINITE

Rule 14a-8(i)(3) permits companies to exclude shareholder proposals "[i]f the proposal or supporting statement is contrary to any of the [SEC's] proxy rules, including [17 C.F.R.] § 240.14a-9 [("Rule 14a-9")], which prohibits materially false or misleading statements in proxy materials." 17 C.F.R. § 240.14a-8(i)(3). Rule 14a-9 provides:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any

statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

There are many reasons why Chevedden's proposal should be excluded under Rule 14a-8(i)(3) and Rule 14a-9.

### A. The Proposal Contains Materially False and Misleading Information

Chevedden's proposal contains at least one flat-out misrepresentation. It asserts, in a partial sentence: "In regard to executive pay there was $35 million for John Wren." This is simply false (and, in any case, has nothing to do with the proposal). Total compensation in 2012 for Mr. Wren, the Chief Executive Officer of Omnicom, as reported in Omnicom's most recent (2013) proxy statement, was $14,846,067, not "$35 million." (Rule 56.1 Statement of Facts at ¶ 6; Lightdale Decl., Ex. 21.) There is no reason Omnicom should be required to publish and disseminate materially false information to its shareholders—and Rules 14a-8(i)(3) and 14a-9 do not require it to do so. *See Comshare, Inc.*, *SEC No-Action Letter (1983-2003)*, WSB File No. 0828200007 (Aug. 23, 2000) (concurring with exclusion of proposal requesting amendments to a company's rights plan where the supporting statement mischaracterized the company's current rights plan).

In addition, where a shareholder proposal cites to non-public external sources, the shareholder must provide the company with source materials in order to show that references to those materials are not false or misleading. *See* SEC Staff Legal Bulletin No. 14G, at 4-5 (Oct. 16, 2012), http://www.sec.gov/interps/legal/cfslb14g.htm; *see also The Charles Schwab Corp.*, *SEC No-Action Letter (2004-2013)*, WSB File No. 0312201216 (CCH) (Mar. 7, 2012). Here, however, the supporting statement for the proposal contains various assertions attributed to

something called "GMI Ratings" and an unspecified, uncited, "Yale Law School study."

(Lightdale Decl., Ex. 5.) When requested, Chevedden inexplicably declined to provide

Omnicom copies of the cited documents. (Rule 56.1 Statement of Facts at ¶ 3; Lightdale Decl., ¶

9.) The GMI Ratings website is non-public. *See* GMI RATINGS, http://www3.gmiratings.com/

(last visited Jan. 27, 2014). Moreover, the paragraph of the proposal that refers to GMI Ratings

appears to attribute *all* of its assertions to GMI Ratings—yet there is no way of knowing whether

GMI Ratings actually says all that Chevedden attributes to it. Exclusion is warranted on this

additional basis. *See* SEC Staff Legal Bulletin No. 14G, at 4-5.

Omnicom should be permitted to exclude the proposal and supporting statement

as materially false and misleading under Rule 14a-8(i)(3).

### B. The Proposal is Impermissibly Vague and Indefinite Under Rule 14a-8(i)(3) Because Key Terms are Undefined or Ambiguous

The SEC Staff has explained that a shareholder proposal is excludable under Rule

14a-8(i)(3) if the proposal is "so inherently vague or indefinite that neither the stockholders

voting on the proposal, nor the company implementing the proposal (if adopted), would be able

to determine with any reasonable certainty exactly what actions or measures the proposal

requires." SEC Staff Legal Bulletin No. 14B at B.4 (Sept. 15, 2004),

https://www.sec.gov/interps/legal/cfslb14b.htm. A proposal may be materially misleading as

vague and indefinite where "any action ultimately taken by the Company upon implementation

[of the proposal] could be significantly different from the actions envisioned by the shareholders

voting on the proposal." *Fuqua Industries, Inc.*, *SEC No-Action Letter (1983-2003)*, WSB File

No. 031891012 (CCH) (Mar. 12 1991); *see also Dyer v. SEC*, 287 F.2d 773, 781 (8th Cir. 1961)

(upholding SEC determination "that the proposal, as drafted and submitted to the company, is so

vague and indefinite as to make it impossible for either the board of directors or the stockholders at large to comprehend precisely what the proposal would entail").

Here, the proposal is impermissibly vague and indefinite because, among other things, it fails to define key terms that are subject to multiple interpretations, and thus precludes shareholders and Omnicom from understanding what it would and would not prohibit.

### 1. The Undefined Term "Uncontested Matters" is Impermissibly Vague and Indefinite

The proposal purports to apply only to "votes cast by proxy on uncontested matters." (Lightdale Decl., Ex. 5.) This is impermissibly vague and indefinite on several levels.

The term "uncontested" is itself undefined. (Lightdale Decl., Ex. 5.) Generally speaking, any matter that is subject to a vote is, by definition, contested. *Contested Definition*, OXFORD ENGLISH DICTIONARY, http://www.oed.com/view/Entry/40199?redirectedFrom= contested#eid (last visited Jan. 28, 2014). It is therefore anything but clear what matters, put up for a vote, are to be considered "uncontested" for purposes of the proposal.

This ambiguity is underscored by the proposal itself. The proposal lists three categories of so-called "uncontested matters":

> 1) management-sponsored or Board-sponsored resolutions seeking approval of executive pay or for other purposes, including votes mandated under applicable stock exchange rules; 2) proposals required by law, or the Company's Bylaws, to be put before shareholders for a vote (e.g., say-on-pay votes); and 3) Rule 14a-8 shareholder resolutions included in the proxy.

(Lightdale Decl., Ex. 5.) However, all three of these supposedly uncontested matters can be (and often are) contested. *See generally* R. FRANKLIN BALOTTI ET AL, MEETINGS OF STOCKHOLDERS § 12.6 (July 2013). Indeed, the third category ("Rule 14a-8 shareholder resolutions included in the proxy") is, as a practical matter, *always* contested. This is because if a company agrees with a

shareholder's proposal, it simply implements the proposal without the need for a shareholder vote. If the proposal is up for a vote it is because the company disagrees with and contests it.

Similarly, the first category of matters in the proposal ("resolutions seeking approval of executive pay") appears, at a minimum, to substantially overlap the second category ("say-on-pay" executive compensation voting), and so it is unclear how, or to what extent, Chevedden intends these to be distinct categories and how to tell the difference. As if all that were not confusing enough, the categories of "proposals required by law" and "votes mandated by applicable stock exchange rules" would also appear at least to overlap, yet are distinguished in the proposal without explanation, and both require reference to some unspecified external rules or standards.

There is, therefore, no way for Omnicom, its management or its directors to know what proposals would be covered by Chevedden's proposal and which ones would not. How to comply with it would be anyone's guess. Such vague and indefinite (and self-contradictory) proposals are routinely excluded from proxy materials. *See Bank of America Corp.*, *SEC No-Action Letter (2004-2013)*, WSB File No. 0325201312 (CCH) (Mar. 12, 2013) (excluding proposal requiring a stockholder value committee to explore "extraordinary transactions," defined as transactions that would require shareholder approval, but providing as examples certain transactions that would not require shareholder approval); *Prudential Financial Inc., SEC No-Action Letter (2004-2013)*, WSB File No. 0226200716 (CCH) (Feb. 16, 2006) (concurring with the exclusion of proposal requiring stockholder approval for certain "senior management incentive compensation programs" because the proposal contained key terms and phrases which were susceptible to differing interpretations). Indeed, Chevedden himself has had proposals excluded on this very basis. *See, e.g., Deere & Co.*, *SEC No-Action Letter (2004-2013)*, WSB

File No. 1118201301 (CCH) (Nov. 4, 2013) (permitting exclusion of Chevedden's proposal under Rule 14a-8(i)(3) as vague and indefinite because "neither shareholders nor the company would be able to determine with any reasonable certainty exactly what actions or measure the proposal requires").

Omnicom should be permitted to exclude the proposal from the proxy statement as impermissibly vague and indefinite pursuant to Rule 14a-8(i)(3).

**2.    The Undefined Term "Running Tally" is Impermissibly Vague and Indefinite**

The proposal would also require that Omnicom's management and directors be denied access to a "running tally" of shareholder votes.  (Lightdale Decl., Ex. 5.)  However, the proposal makes no attempt to define what that term means, either.

As noted above, during proxy voting, companies routinely receive from investors, financial institutions, investor communications and proxy solicitation firms a variety of information about shareholder voting at different points in time.  *See supra* at 6.  Chevedden's proposal offers no explanation regarding what, if any, of this information is intended to be deemed a "running tally."  Does it apply to both oral and written information?  Information provided directly by shareholders?  Information provided by shareholder proxy and communications firms?  Information provided by banks, brokerages or other financial institutions that hold shares for beneficial owners in "street name"?  What about information that banks and brokers are *required* by Rule 14b-2 to provide to companies containing voting instructions of their beneficial owner-clients—are those covered by Chevedden's proposal?  *See* 17 C.F.R. § 240.14b-2(b)(2), (3).  The answers to these questions are anyone's guess.  There is simply no way of knowing what voting information management and directors would be

prohibited from accessing under the proposal, and no way for them to comply with it.[8]  This is ample grounds for excluding the proposal.

The SEC Staff has excluded Chevedden's own proposals as vague and indefinite under circumstances even less apparent than this one.  For example, in *AT&T, Inc.*, *SEC No-Action Letter (2004-2013)*, WSB File No. 0301201030 (CCH) (Feb. 16, 2010), a shareholder advanced a proposal to require AT&T to disclose "payments used for grassroots lobbying communications as defined in 26 C.F.R. § 56.4911-2."  *Id.* at 2.  The Staff permitted the proposal to be excluded because, while 26 C.F.R. § 56.4911-2 contains a definition of "grassroots lobbying communication," AT&T argued that this was insufficient because the definition was complex and unclear.  *Id.* at 3, 9.  Here, the term "running tally" is not defined at all.

Chevedden's proposal should be excluded as impermissibly vague and indefinite under Rule 14a-8(i)(3) for this additional reason.

### 3. The Undefined Term "Other Proper Purposes" is Impermissibly Vague and Indefinite

In what may be its most confused portion, the proposal states:  "Nor shall this proposal impede our Company's ability to monitor the number of votes cast to achieve a quorum, or to conduct solicitations for other proper purposes."  (Lightdale Decl., Ex. 5.)  There is no telling what this means.

The sentence appears intended to create an exception to the proposal, permitting access to voting information as long as it is for a "proper purpose."  The term "proper purpose," however, is undefined.  (Lightdale Decl., Ex. 5.)  Its meaning is, of course, highly subjective and subject to multiple interpretations in various contexts.  Accordingly, just as it is unknown which

---

[8]    Further compounding this confusion is that the proposal does not explain *who* is encompassed by "management."  It is thus unknown which executives must try to figure out how to comply with the proposal—if compliance is even possible.

voting matters are intended to be covered by the proposal (for reasons explained above), it is also unknown which voting matters are intended *not* to be covered by the proposal under this "proper purpose" exception.

Here again, the proposal itself highlights this ambiguity. On the one hand, it seeks to prevent access to voting information on certain "proposals required by law," but on the other hand it would permit access to voting information "to conduct solicitations for other proper purposes"—as though a solicitation for "proposals required by law" is somehow not a proper purpose. (Lightdale Decl., Ex. 5.) This sort of internal inconsistency is a clear basis for exclusion. *See Verizon Communications Inc.*, *SEC No-Action Letter (2004-2013)*, WSB File No. 0303200804 (CCH) (Feb. 21, 2008) (excluding proposal attempting to set formulas for short- and long-term incentive-based executive compensation where the company argued that because the methods of calculation were inconsistent with each other, it could not determine with any certainty how to implement the proposal).[9]

There is certainly no way a shareholder can understand this proposal, nor is there any way Omnicom can implement or abide by it in a coherent way. Omnicom should be permitted to exclude the proposal under Rule 14a-8(i)(3) for this additional reason.

### 4. Substantial Portions of the Supporting Statement are Irrelevant to the Subject Matter of the Proposal so as to be Materially Misleading

There are still other independent grounds that warrant the exclusion of the proposal under Rule 14a-8(i)(3). Rule 14a-8(i)(3) permits the exclusion of a proposal when "substantial portions of the supporting statement are irrelevant to a consideration of the subject

---

[9] The same type of irreconcilable internal inconsistency is found in the proposal's attempt to create an exception "to achieve a quorum." (Lightdale Decl., Ex. 5.) It offers no guidance on how management or the board could monitor voting information to determine whether a quorum exists while otherwise being denied access to that information.

matter of the proposal, such that there is a strong likelihood that a reasonable shareholder would be uncertain as to the matter on which she is being asked to vote." SEC Staff Legal Bulletin 14B, Item B.4; *see also Entergy Corp.*, *SEC No-Action Letter (2004-2013)*, WSB File No. 0226200738 (CCH) (Feb. 14, 2007) (permitting the exclusion of a proposal under Rule 14a-8(i)(3) where the company argued that both the proposal and supporting statement were materially misleading and false).

Here, substantial portions of the proposal are irrelevant to the subject matter of the proposal. For instance, the supporting statement observes that seven of Omnicom's directors have tenures of more than sixteen years. (Lightdale Decl., Ex. 5.) Chevedden appears to be asserting that these tenures somehow threaten the directors' independence. *Id.* Even if that were true (which it is not), director independence has no bearing on the voting procedures in the proposal. Similarly, the supporting statement asserts the Omnicom Board "had not formally taken responsibility in overseeing our company's social impacts." *Id.* This vague allusion to unspecified "social impacts" has nothing to do with confidential shareholder voting. These *non sequiturs* provide additional bases for exclusion. *See Energy East Corp.*, *SEC No-Action Letter (1983-2003)*, WSB File No. 0324200360 (CCH) (Mar. 20, 2003) (permitting the exclusion of a proposal where, among other defects, the supporting statement was irrelevant to the subject matter of the proposal).

Omnicom should be permitted to exclude the proposal from the proxy statement pursuant to Rule 14a-8(i)(3) because substantial portions of the supporting statement are so irrelevant as to be materially misleading.

## III. THE PROPOSAL SHOULD BE EXCLUDED UNDER RULE 14a-8(i)(7) BECAUSE IT IMPERMISSIBLY RELATES TO ORDINARY BUSINESS MATTERS

Under Rule 14a-8(i)(7), a company may exclude from its proxy statement a shareholder proposal that "deals with a matter relating to the company's ordinary business operations." 17 C.F.R. § 240.14a-8(i)(7); *see also IDACORP, Inc.*, *SEC No-Action Letter (2004-2013)*, WSB File No. 1210200711 (CCH) (Dec. 10, 2007) (granting relief under Rule 14a-8(i)(7) on the basis that a proposal related to ordinary business operations). According to the SEC, the term "ordinary business" "refers to matters that are not necessarily 'ordinary' in the common meaning of the word," but instead the term "is rooted in the corporate law concept providing management with flexibility in directing certain core matters involving the company's business and operations." SEC, Exchange Act Release No. 34-40,018, 17 C.F.R § 240 at 3 (May 21, 1998), *available at* http://www.sec.gov/rules/final/34-400018.htm. Accordingly, a shareholder proposal is properly excluded where (i) it relates to "tasks so fundamental to management's ability to run a company on a day-to-day basis they could not be subject to shareholder oversight," and (ii) it "seeks to 'micromanage' a company by probing too deeply into matters upon which shareholders would not be in a position to make an informed judgment." *Id*. at 5. Here, the proposal would violate both of these principles.

*First*, the proposal seeks to inhibit Omnicom's ability to engage in routine dialogue with its shareholders. Shareholder communication is an ordinary business matter, not something appropriate for a shareholder vote. *See Peregrine Pharmaceuticals*, *SEC No-Action Letter (2004-2013)*, WSB File No. 0722201306(CCH) (Jul. 16, 2013) ("Proposals concerning procedures for enabling shareholder communications on matters relating to ordinary business generally are excludable under rule 14a-8(i)(7)"). Attempts to regulate how and when a company solicits its shareholders implicate ordinary business matters—and thus may be

excluded. *See Boeing Co.*, *SEC No-Action Letter (1983-2003)*, WSB File No. 0305200107(CCH) (Feb. 20, 2001) (permitting exclusion under Rule 14a-8(i)(7) "as relating to [Boeing Co.]'s ordinary business operations (i.e., the presentation of additional proxy solicitation expenses in reports to shareholders)").[10] Chevedden's proposal plainly violates this principle.

*Second*, the proposal asks shareholders to vote on issues on which they cannot reasonably be expected to make informed judgments. The proposal asks shareholders to decide whether to prohibit Omnicom's management and directors from examining a "running tally" for three categories of "uncontested matters"—the definitions of which are, as explained above, far from clear—but to permit management and the Board to examine such information for all other matters. Shareholders generally are not equipped to make such fine distinctions regarding how a company should conduct itself. Indeed, this is exactly the kind of micromanagement of company decisions that Rule 14a-8(i)(7) precludes. *See, e.g.*, *Amazon.com, Inc.*, *SEC No-Action Letter (2004-2013)*, WSB File No. 0401201315 (CCH) (Mar. 20, 2013) (finding shareholder proposal regarding how board was to advise on voting items in the proxy filing sought to micromanage the company to an impermissible degree); *General Electric Co.*, *SEC No-Action Letter (1983-2003)*, WSB File No. 0222200003 (CCH) (Feb 10, 2000) (concurring in exclusion of proposal requesting discontinuation of an accounting technique where the Staff noted it related to ordinary business matter of "choice of accounting methods"); *Wal-Mart Stores, Inc.*, *SEC No-Action Letter (1983-2003)*, WSB File No. 032299018 (CCH) (Mar. 15, 1999) (concurring in exclusion

---

[10]      *See also Jameson Inns, Inc.*, *SEC No-Action Letter (1983-2003)*, WSB File No. 0521200103 (CCH) (May 15, 2001) (Staff concurred in the exclusion of a proposal urging the board to consider new ideas for improving shareholder communications as it related to "procedures for improving shareholder communications"); *Advanced Fibre Communications, Inc.*, *SEC No-Action Letter (1983-2003)*, WSB File No. 0324200331 (CCH) (Mar. 10, 2003) (allowing the company to omit a shareholder proposal requesting that the company's board of directors establish an Office of the Board of Directors to enable direct communications between non-management directors and shareholders under Rule 14a-8(i)(7)).

of proposals regarding a company's purchasing from suppliers who use forced labor or certain other practices as relating to ordinary business operations).

The proposal impermissibly relates to ordinary business matters because it relates to shareholder communications and solicitations and it seeks to micromanage the proxy process. As a result, Omnicom should be permitted to exclude the proposal pursuant to Rule 14a-8(i)(7).

## Conclusion

For these reasons, Omnicom's motion for summary judgment should be granted, and a declaratory judgment should be issued, permitting the exclusion of the proposal from Omnicom's 2014 proxy statement.

Dated:  February 7, 2014

Respectfully submitted,

/s/ Jeff G. Hammel
Jeff G. Hammel
Sarah Lightdale
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
Tel: (212) 906-1200
Fax: (212) 751-4864
E-mail: jeff.hammel@lw.com
E-mail: sarah.lightdale@lw.com

Counsel for Plaintiff Omnicom Group Inc.