Docket and File

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/28/2014

| | |
|---|---|
| OMNICOM GROUP, INC., § § Plaintiff § § v. § § JOHN CHEVEDDEN, § § Defendant § § § § | Civil Action 1:14-cv-0386-LLS-GWG |

### DEFENDANT'S MEMORANDUM IN REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

#### INTRODUCTION

Omnicom requested an order declaring that it may exclude the Defendant's Rule 14a-8 proposal from its proxy materials for its 2014 annual meeting. The Defendant moved to dismiss for (1) lack of subject matter jurisdiction, (2) lack of a private right of action, and (3) failure to join an indispensable party, namely the Securities and Exchange Commission (the "SEC").

In his initial brief supporting his motion to dismiss, the Defendant cited *Clapper v. Amnesty International USA*, 133 S. Ct. 1138 (2013), in which the Supreme Court ruled that a "threatened injury must be certainly impending to constitute injury in fact" and "[a]llegations of possible future injury" are not sufficient. *Whitmore v. Arkansas*, 495 U. S. 149, 158. Pp. 8–10. Omnicom, in its opposition brief, failed to articulate a certainly impending injury by the Defendant. Instead, Omnicom cites speciously reasoned opinions issued by courts in the Fifth Circuit that plainly did not apply the Supreme Court's rigorous "certainly impending injury" requirement and asks this Court to blindly follow them. Also, Omnicom does not dispute that the SEC has the independent statutory authority to enforce Rule 14a-8 or that it cannot be bound by a ruling in a case in which it is not a party. Nevertheless, Omnicom argues that the SEC is not an indispensable party.

1



Omnicom also argues that it has a private right to pursue this action despite nothing in the statute indicating that that was Congress' intent. Omnicom is wrong on each count.

Omnicom correctly points out that the Defendant has made similar arguments to dismiss similar cases in courts in the Fifth Circuit (including one brought by the same law firm as in this case on behalf of another corporate client) and has lost each one. Nevertheless, the Defendant believes a fair judge would conclude that those courts' rulings are inconsistent with Supreme Court precedents. Therefore, he is not reluctant to present his arguments to this court. Like Diogenes, he is searching for an honest judge who is willing to read the opinions cited by Omnicom with an open mind, and, if he finds they are specious, to have the courage to say so.

## ARGUMENT

### I. OMNICOM LACKS ARTICLE III STANDING.

#### A. OMNICOM FACES NO CERTAINLY IMPENDING INJURY.

Without articulating a "certainly impending" injury by the Defendant, Omnicom nevertheless asks this Court to endorse its decision to exclude the Defendant's proposal from its proxy materials because "Omnicom's annual meeting is scheduled for May 20, 2014, and its proxy materials must be finalized and distributed to shareholders by April 10, 2014." Absent a declaratory judgment, Omnicom claims it would be exposed "to what the Fifth Circuit described as "an 'almost-certain' probability of an investigation by the SEC's Division of Enforcement," [*Waste Connections, Inc. v. Chevedden*, No. 13-20336, 2014 WL 554566 (5th Cir. Feb. 13, 2014) (per curiam)]" as well as potential liability to Chevedden and other shareholders. However, a federal court is not authorized to provide legal advice if a plaintiff makes "[a]llegations of possible future injury" but fails to demonstrate a "certainly impending injury." *Clapper*.

None of the consequences Omnicom claims to fear constitutes a certainly impending injury. First, the "controversy" between the parties, i.e., whether the Defendant has complied with Rule 14a-8, is solely an academic one. Omnicom has not alleged any threat by the Defendant to

2

interfere with its decision to exclude his proposal from its proxy materials. Despite Omnicom's inflammatory rhetoric about being "forced" or "coerced" into including it in its proxy materials, there is no reason to find a potential lawsuit by the Defendant (or any other party) to be other than hypothetical.[1] A hypothetical injury is insufficient to confer standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). The Defendant merely submitted a proposal that he believes complies with Rule 14a-8. Omnicom disagrees and states that it intends to exclude it from its proxy materials. Unlike the declaratory judgment plaintiff in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)[2], Omnicom can do as it wishes with no fear that the Defendant will commence a lawsuit.

## B. A DECLARATORY JUDGMENT WILL NOT CAUSE THE DEFENDANT TO TAKE (OR CEASE) ANY ACTION.

If Omnicom decides to exclude the Defendant's proposal from its proxy materials, a declaratory judgment will have no effect on his behavior. As the Supreme Court explained in *Hewitt v. Helms*, 482 U.S. 755, (1987):

---

[1] The Defendant has never sued or threatened to sue any company to compel it to include a Rule 14a-8 proposal in its proxy materials, nor would it be cost effective for him to bring such a suit. Moreover, the Defendant has irrevocably promised not to sue Omnicom if it excludes his proposal from its proxy materials. In *Already, LLC v. Nike, Inc.* 133 S. Ct. 721 (2013), the Supreme Court ruled that once a declaratory judgment defendant issues a sufficiently broad irrevocable covenant not to sue the plaintiff, the case is moot.

[2] The *MedImmune* Court presumed that a lawsuit by the declaratory judgment defendant was a virtually certainty in the absence of declaratory relief because it had delivered a letter to the plaintiff expressing its belief that a drug marketed by the plaintiff was covered by a patent held by the defendant and that it expected the plaintiff to pay it royalties. According to the Supreme Court, "[The plaintiff] considered the letter to be a clear threat . . . to sue for patent infringement if [the plaintiff] did not make royalty payments as demanded." The *MedImmune* Court reasonably construed that letter as an imminent threat to sue the plaintiff and that threat conferred standing on the plaintiff to seek a declaratory judgment. That is, even though MedImmune believed Genentech's patent was invalid, it feared to cease making licensing payments because the threat of a patent infringement lawsuit by Genentech was real and immediate and the loss of such a suit could be financially devastating to MedImmune. Given the huge sums of money at stake, if MedImmune ceased to pay royalties, it was logical to assume that, absent a declaration that the patent at issue was invalid, a patent infringement suit by Genentech was indeed "certainly impending." Thus, the *MedImmune* Court's concern about the declaratory judgment plaintiff's "betting the farm" was based upon circumstances unique to that case. Nothing in *MedImmune* suggests that a court need not consider the likelihood that a claimed future injury will actually occur or implies that such an injury need not be "certainly impending."

> In all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces — the payment of damages, or some specific performance, or the termination of some conduct. Redress is sought *through* the court, but *from* the defendant. This is no less true of a declaratory judgment suit than of any other action. The real value of the judicial pronouncement — what makes it a proper judicial resolution of a "case or controversy" rather than an advisory opinion — is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.* (emphasis in original).

<u>Whether or not a declaratory judgment issues</u>, the Defendant will pay no damages and will not take (or cease) any action whatsoever. While Omnicom (dubiously) claims it will suffer real legal consequences if it does not obtain the declaration it seeks, no consequences will result from any action taken by the Defendant. Hence, any opinion issued by this Court on the merits would be an improper advisory opinion.

### C. OMNICOM'S SPECULATION ABOUT ADVERSE FUTURE ACTIONS OF NON-PARTIES IS INSUFFICIENT TO CONFER STANDING.

Unable to identify a certainly impending injury by the Defendants, Omnicom speculates that, absent a declaratory judgment, if it acts as it wishes, it might be subject to potential litigation brought by another shareholder or by the SEC. However, the *Clapper* Court rejected speculation about the choices of independent actors that are not before the court to support standing.

An SEC investigation, which could be conducted without the knowledge of Omnicom, is not, by itself, a cognizable injury in fact. Many SEC investigations are perfunctory and end with no adverse action taken.[3] In that case, Omnicom would suffer no injury at all. In fact, in the entire seventy-two year history of Rule 14a-8 and its predecessor rule, thousands of shareholder proposals have been submitted to companies but the SEC has brought just one enforcement action — and that was initiated sixty-eight years ago. See *SEC v. TransAmerica Corp.*, 163 F.2d 511 (3d. Cir. 1947). In addition, nothing prevented Omnicom from requesting no-action relief from the SEC to avoid even an investigation. Omnicom "cannot manufacture standing merely by inflicting

---

[3] Omnicom is so sure it is entitled to exclude the Defendant's proposal, which it labels "fatally and irreparably defective under Rule 14a-8." Why then would it be concerned that the SEC might take a contrary view?

4

harm on [itself]...." *Clapper*. In any event, citing a snippet of unsupported dicta about general SEC practices contained in a book, as the *Waste Connections* court did, to support the plaintiff's standing in that case, does not meet *Lujan's* requirement that a claimed future injury in fact be "particularized" or *Clapper's* requirement that it be "certainly impending"

In addition, to the Defendant's knowledge, no lawsuit by a shareholder other than the proponent has ever been brought against a company that determined to exclude a Rule 14a-8 proposal from its proxy materials. Nor has Omnicom cited such a case. Thus, it is an overstatement to label Omnicom's purported fear of a lawsuit from such a non-party if it excludes the Defendants' proposal from its proxy materials as "speculative," let alone "certainly impending."

### D. THE FIFTH CIRCUIT OPINIONS TO THE CONTRARY ARE SPECIOUSLY REASONED.

Omnicom cites *KBR Inc. v. Chevedden*, 478 Fed. Appx. 213 (5th Cir. 2012) as support for its contention that it has Article III standing. *KBR* was a case that involved substantially the same fact pattern as this one but it was superseded by, and cannot be reconciled with, *Clapper* or *Nike*. *KBR*'s entire Article III standing analysis is as follows:

> Chevedden also argues that his conflict with KBR lacks the sufficient immediacy and reality to give KBR standing to bring a declaratory judgment action. The Declaratory Judgment Act permits a federal court to "declare the rights and other legal relations" of parties in "a case of actual controversy." 28 U.S.C. § 2201(a). Chevedden's proposal put KBR to a choice between spending a significant sum to revise its proxy statement, or excluding Chevedden's proposal and exposing itself to potential litigation. The choice between accommodating a potential adverse litigant at substantial expense or taking action that would expose onself [sic] to a suit creates a justiciable dispute between parties. *See, e.g., MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 137, 127 S. Ct. 764, 777 (2007) (holding that a patent licensee could seek a declaration that the patent was invalid without first exposing itself to an infringement suit by withholding payments due under its licensing agreement with the cpatent [sic] holder). Chevedden argues that any possibility of litigation stemming from a decision to exclude his proposal is vitiated by his stipulation that he would not sue if KBR chose that course. But whichever course KBR chose, the decision would implicate KBR's duties to all of its shareholders. Also, wrongly excluding an eligible shareholder's proposal from its proxy statements could expose KBR to an SEC enforcement action.

5

Thus, the *KBR* Court ruled that merely "expos[ing] onself [sic] to a suit" is sufficient to constitute an injury in fact. Subsequently, the Supreme Court, in *Clapper*, made it clear that such a relaxed standard is incorrect. Also, the *KBR* Court's reference to a hypothetical enforcement action, by the SEC is irrelevant to a determination of standing. *Lujan* ("[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'") (citation omitted).

In a recent opinion, the Fifth Circuit, in *Waste Connections*, upheld its spuriously reasoned *KBR* opinion, despite *KBR*'s inconsistency with the subsequent *Clapper* and *Nike* decisions. The entire "analysis" of standing by the *Waste Connections* Court is as follows:

> The Defendants' argument that *KBR* has been implicitly overruled or is no longer persuasive in light of recent Supreme Court decisions is without merit. First, *Clapper v. Amnesty International USA* simply confirms "the *well-established* requirement that threatened injury must be 'certainly impending.'" 133 S.Ct. 1138, 1143 (2013) (emphasis added). Unlike the plaintiffs in *Clapper* whose alleged injury depended on a "chain of events" and, therefore, was not "certainly impending," WCN explained to the district court that the exclusion of the Defendants' proposal could lead directly to an SEC enforcement action or liability from other shareholders. *See Clapper*, 133 S.Ct. at 1148–50. (emphasis in original; footnote omitted).

The *Waste Connections* Court thus relied on a logical fallacy, i.e., affirming the antecedent, to support its erroneous conclusion.[4] That the *Clapper* Court found a chain of events, each of uncertain probability, inadequate to support a finding of a certainly impending injury does not imply that any other claimed potential injury that does not require a chain of events is certainly impending. Moreover, the word "could" indicates that something is possible and is plainly inadequate to meet the plaintiff's burden to establish an injury that is certainly impending.

Finally, the *Waste Connections* Court "explained" in a brief cryptic footnote why the Defendant's irrevocable promise not to sue Omnicom did not moot the case: "*Already, LLC v.*

---

[4] "If A, then B" does not imply "If not A, then not B." For example, if it is true that "if it is snowing, the temperature must be 32 degrees or less," it does not follow that "if it is not snowing, it must be above 32 degrees."

6

*Nike, Inc.*, 133 S.Ct. 721, 728–29 (2013), is inapposite because it involves the situation of a patent owner and alleged infringer,[5] not a party issuing a proxy to multiple potential parties." That observation has no relevance to the question of whether an irrevocable promise by a declaratory judgment defendant not to sue the plaintiff moots the case and is therefore, a *non sequitur*. It certainly is not a good reason to dismiss the application of this general statement from *Nike* to <u>any</u> case: "No matter how vehemently the parties...dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Nike*

In sum, the asinine *Waste Connections* opinion is aptly named because it is based upon junk logic. Since *KBR* and *Waste Connections* opinions are speciously reasoned, this Court should not rely on them. If it independently applies the principles set forth in *Clapper* and *Nike*, it must conclude that Omnicom has not met the requirements necessary to establish Article III standing.

## II. OMNICOM LACKS A PRIVATE CAUSE OF ACTION.

Omnicom contends that *Roosevelt v. E.I. Du Pont deNemours & Co.*, 958 F.2d 416 (D.C. Cir. 1992), in which the D.C. Circuit found a private right of action to enforce Rule 14a-8, is still reliable authority despite the indisputable fact that Section 14(a) does not contain the "rights-creating" language required by *Alexander v. Sandoval*, 532 U.S. 275 (2001) and its progeny to infer Congress' intent to authorize a private cause of action to enforce it.[6]

---

[5] The *Waste Connections* Court was wrong even about the facts. *Nike* involved a trademark dispute, not a patent dispute.

[6] Section 14(a) of the Act is as follows:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to Section 12.

"Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Sandoval* (citing *California v. Sierra Club*, 451 U. S. 287, 294 (1981).

In *Rauchman v. Mobil Corp.*, 739 F. 2d 205 (1984), the Court of Appeals for the Sixth Circuit expressed "substantial reservations concerning the existence of an implied private cause of action based upon a violation of rule 14a-8." It explained:

> We are especially uncertain in light of recent Supreme Court decisions limiting the availability of private causes of action generally. *See Universities Research Ass'n v. Coutu*, 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981); *Transamerica Mortgage Advisers, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). Furthermore, rule 14a-8 seems unrelated to prohibiting the inclusion of misleading or dishonest information in proxy statements, which is the primary object of the statute. *See, e.g., J.I. Case Co. v. Borak*, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964) (The purpose of § 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation."). Rather, the rule is aimed at accomplishing what would appear to us to be "at best a subsidiary purpose of the federal legislation." *Santa Fe Industries v. Green*, 430 U.S. 462, 478, 97 S.Ct. 1292, 1303, 51 L.Ed.2d 480 (1977) (quoting *Cort v. Ash*, 422 U.S. 66, 80, 95 S.Ct. 2080, 2089, 45 L.Ed.2d 26 (1975)

Yet, eight years later, the *Roosevelt* court had no doubt about the existence an implied private cause of action based upon a violation of Rule 14a-8. Ironically, one can infer that decisions like *Roosevelt* influenced the majority in *Sandoval* to emphatically declare that it is not the role of courts to imply a private cause of action "no matter how desirable that might be as a policy matter, or how compatible with the statute."

In *Roosevelt*, Judge (at that time) Ginsburg dutifully cited the Supreme Court's position at that time that "any private right of action for violating a federal statute must ultimately rest on congressional intent to provide a private remedy." However, she did not apply the textual analysis mandated by *Sandoval* to discern Congress' intent to provide a private cause of action to enforce a statutory provision or a rule. Rather, in contradistinction to the *Rauchman* court's concern about the differences between Rule 14a-8 and Rule 14a-9, the section in *Roosevelt* entitled "Congressional Intent and Section 14(a)" readily piggybacked on *Borak*. It conducted an extensive analysis of Congressional intent but not one comporting with *Sandoval*'s focus on textual analysis.

After finding that both Rule 14a-8 and Rule 14a-9 protect "the informational right rooted in section 14(a)," Judge Ginzburg concluded that, since *Borak* endorsed an implied private right to enforce Rule 14a-9, the same is true for Rule 14a-8. Applying what the *Sandoval* Court later labeled an *ancien regime* analysis, the *Roosevelt* Court thus found it desirable as a policy matter and compatible with the statute, to imply a private right to enforce Rule 14a-8:

> Access to management proxy solicitations to sound out management views and to communicate with other shareholders on matters of major import is a right informational in character, one properly derived from section 14(a) <u>and appropriately enforced by private right of action</u>. The right to be informed that Rule 14a-8 affirms is complementary to, although discrete from, the Rule 14a-9 ban on misleading statements in proxy solicitations, the right to accurate information on which the Court focused in *Borak*. (Emphasis added.)

\*\*\*

> Reminding us that *Borak* recognized a private right of action under section 14(a) *as implemented by Rule 14a-9*, Du Pont stresses that the more recent decisions (*Touche Ross* and *Virginia Bankshares*) counsel against continuing judicial implication of private rights. However, in view of the informational right rooted in section 14(a), we see no instruction in current Supreme Court opinions to "freeze out" private enforcement of Rule 14a-8, a prescription plainly serving the congressional aim to facilitate "corporate democracy." See *Virginia Bankshares*, 501 U.S. 2764 (acknowledging some leeway for "rounding out the scope of an implied private statutory right of action").

The *Sandoval* Court emphatically rejected policy and compatibility with the statute (as set forth in *Borak*) as reasons to find an implied cause of action. Instead, it demanded that courts use a strict textual approach. Moreover, the Supreme Court subsequently made it clear it would refuse to find a private right of action to enforce any statutory provision that was not "unambiguously conferred." *Gonzaga Univ. v. Doe*, 536 US 273 (2002).

After the following rebuke in *Sandoval*, no court today could assert that "we see no instruction in current Supreme Court opinions to 'freeze out' private enforcement of Rule 14a-8":

> Respondents would have us revert in this case to the understanding of private causes of action that held sway 40 years ago when Title VI was enacted. That understanding is captured by the Court's statement in *J. I. Case Co. v. Borak*, 377 U. S. 426, 433 (1964), that "it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose" expressed

9

by a statute. We abandoned that understanding in *Cort v. Ash*, 422 U. S. 66, 78 (1975)—which itself interpreted a statute enacted under the *ancien regime*—and have not returned to it since. Not even when interpreting the same Securities Exchange Act of 1934 that was at issue in *Borak* have we applied *Borak*'s method for discerning and defining causes of action. *See Central Bank of Denver, N. A. v. First Interstate Bank of Denver, N. A.*, 508 U.S. 959 at 188(1993) *supra; Musick, Peeler & Garrett v. Employers Ins. of Wausau*, 508 U. S. 286, 291-293 (1993); *Virginia Bankshares, Inc. v. Sandberg, supra*, at 1102-1103; *Touche Ross & Co. v. Redington, supra*, at 576-578. Having sworn off the habit of venturing beyond Congress's intent, we will not accept respondents' invitation to have one last drink.

Therefore, it is virtually certain that the *Sandoval* Court would have overruled *Roosevelt*. There is a stark contrast between Judge Ginsburg's *Borak*-inspired policy-based opinion in *Roosevelt* and the strict statutory language-based approach Justice Scalia prescribed in *Sandoval* for determining Congress' intent to establish a private remedy. Unsurprisingly, Justice Ginsburg joined Justice Stevens' spirited dissent in *Sandoval* in which he assailed the majority for "a decision unfounded in our precedent and hostile to decades of settled expectations."

It is plain that *Roosevelt* and *Sandoval* cannot be reconciled. First and most important, the *Roosevelt* court did not identify any rights-creating language in Section 14(a). Nor did it consider that Section 21 of the Act authorizes the SEC to "bring an action in the proper district court of the United States" to enjoin a violation of "any provision of [the Act] or the rules or regulations thereunder" which, absent contrary language, indicates that Congress did not intend to create a private remedy to enforce any particular provision. Lastly, the *Roosevelt* court did not consider that Congress expressly authorized investors to sue under Sections 9(f), 16(b), 18(a), and (more recently) 20(d) of the Act, indicating that no intent to enforce Section 14(a) should be inferred.

In *Wisniewski v. Rodale, Inc.*, 510 F. 3d 294 (2007), the Court of Appeals for the Third Circuit thoroughly analyzed the Supreme Court's jurisprudence regarding the existence of an implied private right of action with respect to any federal statute and concluded (in footnote 9) that *Sandoval* made it clear that *Cort v. Ash*, 422 U.S. 66, (1975) had actually overruled *Borak* seventeen years before *Roosevelt* was decided:

10

The *Cort* opinion never explicitly acknowledges that it is rejecting the *Borak* approach. In fact, it cites *Borak* several times in a manner suggesting that it is merely distinguishing the statute at issue in *Borak* from the one addressed in *Cort*. See *Cort*, 422 U.S. at 79-80 & n. 11, 84, 85, 95 S.Ct. 2080. Later cases recognize that *Cort* effectively overruled *Borak*. See, e.g., *Alexander v. Sandoval*, 532 U.S. 275, 287, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001).

Finally, although Omnicom insists that *Roosevelt* and other pre-*Sandoval* decisions finding a private right of action to enforce Rule 14a-8 should not be reconsidered, at least one judge has expressed qualms about it. In *People for the Ethical Treatment of Animals v. Merck & Co.*, No. 1:11-cv-00765 (D.D.C. Aug. 4, 2011), D.C. District Court Judge Jackson made the following salient remarks to plaintiff's counsel during oral argument:

> I believe also that your brief was unduly dismissive of their argument that *Roosevelt* isn't good law anymore. It certainly is important for – yes, I have to follow what the D.C. Circuit says, but I can tee it up for the D.C. Circuit by saying: "D.C. Circuit, I don't think your opinion is good law anymore in light of more recent Supreme Court decisions" and then the D.C. Circuit can tell me what they think of that."

Of course, this Court does not have to "follow what the D.C. Circuit says." It can, and should conclude that *Roosevelt* found an implied private right of action to enforce Rule 14a-8 despite the absence of any rights-containing language in Section 14(a) and hence, that no such right exists. If a precedent cannot pass muster under *Sandoval* and its progeny – and *Roosevelt* cannot – it must be discarded in that legal dustbin that the *Sandoval* Court called "the *ancien regime*."[7]

### III. THE SEC IS AN INDISPESIBLE PARTY.

Omnicom wants to have its cake and eat it. In its opposition brief, it says: "Chevedden offers no reason why this Court cannot accord complete relief between Omnicom and Chevedden, the only two parties whose rights are in dispute." Yet, it also admits in its *Reply Memorandum of*

---

[7] This is especially true when the *ancien regime* ruling was issued by a court in a different circuit. There is no doubt that the *Rauchman* court, which was dubious about implying a private right of action to enforce Rule 14a-8 seventeen years before the Supreme Court decided *Sandoval*, would, if faced with the same case today, conclude it does not exist.

11

*Law in Further Support of Its Motion for Summary Judgment*: "Avoiding potential SEC liability for that decision is precisely why Omnicom [seeks a declaratory judgment against Chevedden]." Omnicom's true motive is thus revealed. But, a plaintiff cannot sue a defendant to get a judgment that will protect it from liability to a non-party. It is obvious Omnicom does not want to tangle with the SEC and thus, has elected not to sue the agency. Although, as indicated, SEC actions to enforce Rule 14a-8 are as rare as hen's teeth, Section 21 of the Securities Exchange Act of 1934 (the "Act") indisputably delegates to the SEC the authority to enforce the Act, including Section 14(a) and the rules adopted pursuant to Section 14(a), including Rule 14a-8.[8] Whether or not the SEC wishes to be a party in this suit is irrelevant because nothing in the Act permits it to delegate its statutory authority to enforce its rules to private parties like the Defendant. Unless the SEC is made a party (or agrees to abide by any order issued in its absence), an order by this Court cannot preclude the SEC from independently determining that Omnicom violated Rule 14a-8 and bringing an enforcement action. Therefore, if Omnicom seeks to immunize itself from an SEC enforcement action, the SEC must be joined.

## CONCLUSION

As explained in this brief and the Defendant's initial brief, Omnicom has failed to demonstrate that it faces a certainly impending injury or that it can achieve complete redress without suing the SEC. In addition, the declaratory judgment Omnicom seeks will have no impact on the Defendant's actions. Therefore, Omnicom lacks Article III standing and a declaration of its rights would constitute a prohibited advisory opinion. In addition, Omnicom has no private right of action to prosecute this action. Finally, Omnicom has failed to join the SEC as an indispensable party. For each of these reasons, this action should be dismissed.

---

[8] Section 21 of the Act, in relevant part, states: (1) "Whenever it shall appear to the Commission that any person is engaged or is about to engage in acts or practices constituting a violation of any provision of this title, the rules or regulations thereunder…it may in its discretion bring an action…to enjoin such acts or practices;" and (2) "Whenever it shall appear to the Commission that any person has violated any provision of this title, the rules or regulations thereunder…the Commission may bring an action in a United States district court to seek, and the court shall have jurisdiction to impose, upon a proper showing, a civil penalty to be paid by the person who committed such violation."

12

Dated: February 27, 2014

Respectfully submitted

*[signature]*

John Chevedden
Pro se Defendant
2215 Nelson Ave. No. 205
Redondo Beach, Calif. 90278
PH: 310-371-7872
olmsted7p@earthlink.net

Certificate of Service

I certify that on February 28, 2014 this answer was delivered to the Clerk of the Court. A copy of this answer is also being provided to Jeff G. Hammel, plaintiff's attorney.

*[signature]*
John Chevedden